# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| DASHANTE SCOTT JONES,<br>    *Plaintiff*,<br><br>v.<br><br>LPC RODI,<br>    *Defendant*. | No. 3:19-cv-1866 (VAB) |

## INITIAL REVIEW ORDER AND
## RULING ON MOTION FOR TEMPORARY RESTRAINING ORDER

Dashante Scott Jones ("Plaintiff") is currently confined at New Haven Correctional Center in New Haven, Connecticut, Notice, ECF No. 6 (Jan. 2, 2020), and has filed a civil rights Complaint *pro se* under 42 U.S.C. § 1983 against "Ms. Rodi LPC." Compl., ECF No.1 (Nov. 22, 2019).

On January 9, 2020, the Court referred Mr. Jones's motion for leave to proceed *in forma pauperis* to Magistrate Judge Robert A. Richardson. Order Referring Case, ECF No. 7 (Jan. 9, 2020).

On January 23, 2020, Judge Richardson granted Mr. Jones's motion for leave to proceed *in forma pauperis* under 28 U.S.C. § 1915(a)(1), and concluded that the claim was "sufficient to proceed to service of process on the defendant." Order, ECF No. 9 (Jan. 23, 2020). Because the Court did not refer the Complaint for review, the Court will **VACATE** Judge Richardson's order to the extent he concluded that the claims asserted in the Complaint were sufficient to proceed to service of process. The Court now reviews the Complaint's allegations under 28 U.S.C. § 1915(e)(2)(B).

Mr. Jones has also filed a second motion for a temporary restraining order to prevent "Defendants and or people working in concert with them from denial and or delaying [his]

access to the courts and or legal work for the litigation of this case herein." Mot. for Temporary Restraining Order, ECF No. 11 at 1 (Feb. 20, 2020) ("Second Mot. for TRO").

For the reasons explained below, the Court **DENIES** Mr. Jones's motion for a temporary restraining order and **DISMISSES** all claims under 28 U.S.C. § 1915A(b).

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Court assumes familiarity with the factual and procedural background of this case. *See* Ruling and Order on Mot. for Temporary Restraining Order, ECF No. 10 at 1-2 (Feb. 14, 2020) ("Ruling and Order on First TRO"). The Complaint includes allegations relating to events that occurred during Mr. Jones's prior confinement at Garner Correctional Institution ("Garner").

On February 1, 2019, Ms. Rodi, a mental health staff member at Garner, allegedly issued Mr. Jones a disciplinary report for indecent exposure. Compl. at 1, 3.

On February 6, 2019, a disciplinary hearing officer allegedly dismissed the charge of indecent exposure based on video footage of the alleged incident from which the charge stemmed. *Id.* at 3, 6-7.

On April 12, 2019, Ms. Rodi allegedly issued Mr. Jones a second disciplinary report for indecent exposure. *Id.* at 3. A hearing was allegedly held to address this disciplinary report, but the outcome of the hearing is unclear. *See id.*

During one or both incidents involving Ms. Rodi's alleged interaction with Mr. Jones, Ms. Rodi allegedly made sexual comments regarding Mr. Jones's genitals. *Id.* Mr. Jones allegedly suffered humiliation, embarrassment, and emotional distress due to Ms. Rodi's comments and false allegations. *Id.* at 3, 5.

On November 22, 2019, Mr. Jones filed this lawsuit, and asserted the following claims against Ms. Rodi: sexual harassment under the Eighth and Fourteenth Amendments; retaliation under the First Amendment; violation of his rights under the Prison Rape Elimination Act ("PREA"), 42 U.S.C. § 15601; as well as two state law claims. Compl. at 3, 10. As relief, Mr. Jones seeks monetary damages. *Id.* at 10.

On February 14, 2020, the Court denied Mr. Jones's first motion for a temporary restraining order and held that "Mr. Jones has not alleged facts to suggest that he would be irreparably harmed if the Court did not grant his request for a temporary restraining order." Ruling and Order on First TRO at 7.

On February 20, 2020, Mr. Jones filed his second motion for a temporary restraining order. Second Mot. for TRO.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'") (quoting 28 U.S.C. § 1915A).

3

The Federal Rules of Civil Procedure require that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s] devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage nonetheless is distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford *pro se* litigants).

## III. DISCUSSION

### A. Claims for Injunctive Relief

In the Second Circuit, a single standard is used to evaluate a request for preliminary injunction and an application for temporary restraining order. *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008).

For either type of relief, Plaintiff must demonstrate that he will suffer irreparable harm if the relief is not granted and meet "one of two related standards: either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claim to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.") *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (citations and internal quotation marks omitted). When the moving party seeks mandatory relief that "alters the status quo by commanding some positive act," however, the burden is higher. *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) (citation and internal quotation marks omitted).

The court should not grant mandatory injunctive relief unless the movant shows "a clear or substantial likelihood of success on the merits[,] . . . a strong showing of irreparable harm . . . [and] that the preliminary injunction is in the public interest." *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (citations and internal quotation marks omitted).

"In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *McMillian v. Konecny*, No. 9:15-CV-0241, 2017 WL 3891692, at *1 (N.D.N.Y. Sept. 6, 2017) (citations and internal quotation marks omitted). In addition, the requested injunctive relief must

relate to the claims in the complaint. *See DeBeers Consol. Mines, Ltd., v. United States*, 325 U.S. 212, 220 (1945) (preliminary injunction appropriate to grant intermediate relief of "the same character as that which relief may be granted finally," but inappropriate where the injunction "deals with a matter lying wholly outside the issues in the suit"); *see also Oliphant v. Quiros*, 2011 EL 2180780, at *1 (D. Conn. May 19, 2010) (citing *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997)).

Under Rule 65(b)(1) of the Federal Rules of Civil Procedure, a district court may issue a temporary restraining order "if specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and the movant certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). Thus, the "[t]he purpose of a temporary restraining order is to preserve an existing situation *in status quo* until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction." *Garcia v. Yonkers School Dist.*, 561 F.3d 97, 107 (2d Cir. 2009) (internal quotation marks and citations omitted).

Mr. Jones's second motion for a temporary restraining order suffers from the first deficiencies as his first. *See* Ruling and Order on First TRO at 4-8 (detailing the many issues with Mr. Jones's first motion). Indeed, the Court received Mr. Jones's second motion on the same date as the Court's prior Ruling and Order on First TRO was mailed to him. *See* Docket Entries (Feb. 20, 2020) (indicating that the Court's order, ECF No. 10, was mailed to him on the same date as the Court received his second motion for a temporary restraining order). Here again, the motion for temporary restraining order is not sworn or verified under penalty of

6

perjury, nor does the Complaint include allegations demonstrating that Mr. Jones would be subject to immediate or irreparable injury if the temporary restraining order were not granted. Lastly, Mr. Jones does not assert that he made any efforts to give notice to Ms. Rodi regarding the filing of this second motion or the relief sought.

Mr. Jones alleges that Lieutenant Luis, the Manager of his housing unit at New Haven Correctional Center, has imposed "illegal housing unit rules" on him in violation of various Administrative Directives.[1] Second Mot. for TRO at 1-2.

As indicated above, the Complaint names one defendant, Ms. Rodi, a mental health staff member who worked at Garner and allegedly issued disciplinary reports charging Mr. Jones with indecent exposure in January 2019 and in April 2019. Mr. Jones filed the Complaint after he had been released from his prior incarceration and the Complaint does not include a request for injunctive relief. Mr. Jones does not allege the involvement of Ms. Rodi in any of the incidents that he describes in his motion as having occurred at New Haven Correctional Center since his re-admission to the Department of Correction. The request for injunctive relief pertaining to rules imposed by a unit manager at New Haven Correctional Center in February 2020 is not related to the allegations or relief sought in the Complaint.

To the extent that Mr. Jones seeks injunctive relief against an individual who is not a defendant in this action, injunctive relief is available against non-parties under very limited circumstances, none of which are present here. *See* Fed. R. Civ. P. 65(d)(2) (providing that an order granting an injunction or restraining order binds only a nonparty who receives actual notice of the order and who is an "officer, agent, servant, employee, or attorney" of a party or "who [is]

---

[1] As the Court has already explained, *see supra* at 9-10, an alleged violation of an Administrative Directive itself likely would not state a claim for relief under Section 1983.

in active concert or participation with" a party or the officer, agent, servant, employee, or attorney of a party, to whom the injunction or restraining order applies); *Sumpter v Skiff*, 260 F. App'x 350, 351 (2d Cir. 2008) ("The district court did not exceed its allowable discretion in denying Sumpter's application for injunctive relief. . . . [because] [t]he New York State Division of Parole . . . , to which Sumpter's motion was directed, was not named as a defendant in the underlying action and does not fall within any of the exceptions listed in Rule 65(d)."); *Abrams v. Waters*, No. 3: 17-CV-1659 (CSH), 2018 WL 1469057, at *6–7 (D. Conn. Mar. 26, 2018) (court lacked personal jurisdiction to enter permanent injunction against warden of correctional facility who was not defendant, had no involvement in underlying claims, and did not fit within limited group of individuals described in Rule 65(d)(2), Fed. R. Civ. P. against whom injunctive relief may be ordered).

Furthermore, as the Court has already noted, "it would be inappropriate for the Court to grant a request for injunctive relief that is unrelated to the claim and the Defendant named in this Complaint." Ruling and Order on First TRO at 6-7 (collecting cases).

Finally, as with his first motion for a temporary restraining order, Mr. Jones has not alleged facts to suggest that he would be irreparably harmed if the Court did not grant his request for a temporary restraining order. There are no facts to suggest that the rules imposed by Lieutenant Luis—allegedly limiting the activities available to Mr. Jones during the daily recreation period or the type of writing instrument available to Mr. Jones to draft letters, requests and legal documents—might result in irreparable harm to Mr. Jones.

Accordingly, the motion for a temporary restraining order will be denied

    **B.**    **First Amendment Claim**

Mr. Jones alleges that he is suing LPC Rodi for retaliation due to his history of filing civil rights actions against employees of the Department of Correction in federal court. Compl. at 5.

The Second Circuit has "instructed district courts to 'approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official-even those otherwise not rising to the level of a constitutional violation-can be characterized as a constitutionally proscribed retaliatory act.'" *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quoting *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir. 2003)). Retaliation claims "stated in wholly conclusory terms" are insufficient. *Id.* (internal quotation marks and citations omitted). To plead a First Amendment retaliation claim, an inmate must plausibly allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dolan*, 794 F.3d at 294 (internal quotation marks and citation omitted).

Although the filing of a lawsuit is a protected activity, Mr. Jones has not alleged the infringement of this or any other protected activity. *See, e.g., Espinal v. Goord*, 558 F.3d 119, 128–29 (2d Cir. 2009) ("There is no dispute that [plaintiff's] earlier federal lawsuit . . . was a protected activity."). Mr. Jones does not allege that LPC Rodi was a defendant in any of the federal lawsuits that he had filed against the Department of Correction, despite stating that Magistrate Judge Holly B. Fitzsimmons presided over a global settlement of his pending federal cases.[2] Nor does he allege when his other lawsuits were filed or whether LPC Rodi was even aware of the lawsuits. Thus, Mr. Jones has failed to assert facts to support an inference that the defendant's alleged adverse action of issuing him disciplinary reports was motivated by, or

---

[2] The review of the Court's docket reflects that LPC Rodi has not been named as a defendant in any case filed by Mr. Jones.

temporally related to, any constitutionally protected conduct. *See, e.g., Schlosser v. Manuel*, No. 3:19-CV-1444 (SRU), 2020 WL 127700, at *4 (D. Conn. Jan. 10, 2020) (concluding that inmate had not stated plausible retaliation claim because he had failed to allege that "a causal connection existed between the responses" by correctional counselor to his grievances about a prior loss of commissary privileges "and the grievances that he had allegedly filed against a nurse and/or the medical department about medical treatment"); *see also Perez v. Keysor,* No. 10–CV–0518 (LEK/CFH), 2013 WL 5493932, at *15 (N.D.N.Y. Sept. 30, 2013) (finding that inmate's claims alleging retaliation "'against other prison employees elsewhere in the New York penal system,' without providing additional factual allegations establishing knowledge and involvement are insufficient to state a claim"); *Roseboro v. Gillespie,* 791 F. Supp. 2d 353, 369 (S.D.N.Y. 2011) (plaintiff failed to provide any basis to believe that a corrections counselor would retaliate for a grievance in which the counselor was not named and of which he was unaware); *Williams v. Goord*, 111 F. Supp. 2d 280, 290 (S.D.N.Y. 2000) ("[P]laintiff has not sufficiently alleged that the conduct of [the defendants] was motivated by plaintiff's activities. Plaintiff fails to plead specific facts or to assert any causal connection between his filing of grievances against [one defendant] and his alleged denial of exercise by" the other defendants.).

Accordingly, Mr. Jones's claim that LPC Rodi issued the disciplinary reports in retaliation for his lawsuits is conclusory and will be dismissed without prejudice.

### B. Sexual Harassment Claims

Mr. Jones alleges that LPC Rodi sexually harassed him by making comments about his genitalia and claiming that he had masturbated in front of her, Compl. at 3, 5, which violated his Eighth Amendment rights, the Prison Rape Elimination Act of 2003 ("PREA"), 34 U.S.C.

§§ 30301-09,[3] and State of Connecticut Department of Correction Administrative Directive 9.5 ("Administrative Directive 9.5"), *id.* at 3, 10.

### 1. Claim Under the Eighth Amendment

In *Boddie v. Schnieder*, 105 F.3d 857 (2d Cir. 1997), the Second Circuit acknowledged that physical "sexual abuse" of a prisoner by a correctional officer "may constitute serious harm inflicted by an officer with a sufficiently culpable state of mind" in violation of a prisoner's Eighth Amendment right to be free from cruel and unusual punishment. *Id.* at 861. In *Crawford v. Cuomo*, 796 F.3d 252 (2d Cir. 2015), the Second Circuit clarified the Eighth Amendment excessive force standard that must be applied to a claim of sexual abuse of an inmate by a prison official and held that in view of the changing standards of human decency, an inmate may state a claim for deliberate indifference if "[a] corrections officer's intentional contact with an inmate's genitalia or other intimate area . . . serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate[.]" *Id.* at 257.

Allegations of verbal sexual harassment or comments by themselves do not state a claim under the Eighth Amendment. *See Trowell v. Theodarakis*, No. 3:18CV446(MPS), 2018 WL 3233140, at *3 (D. Conn. July 2, 2018) (allegation that correctional officer had called the plaintiff "derogatory names based on [plaintiff's] sexual orientation" did not state claim of sexual abuse under Eighth Amendment); *Keaton v. Ponte*, No. 16 CIV. 3063 (KPF), 2017 WL 3382314, at *10 (S.D.N.Y. Aug. 4, 2017) (dismissing prisoner's Eighth Amendment claims of sexual abuse against female corrections officers where there was no "illicit physical contact between a corrections officer and an inmate" and the corrections officers' alleged

---

[3] On September 1, 2017, Congress recodified the PREA, 42 U.S.C. §§ 15601-15609, as 34 U.S.C. §§ 30301-09.

"verbal harassment," encouraging the inmate to use the shower, watching him shower, and making sexual gestures with lipsticks and tongues, "without more, [were] not actionable" as cruel and unusual punishment in violation of the Eight Amendment); *Jones v. Harris*, 665 F. Supp. 2d 384, 396 (S.D.N.Y. 2009) ("verbal sexual harassment of a prisoner, without physical contact, does not violate the Eighth Amendment") (collecting cases). Mr. Jones does not assert facts to suggest that LPC Rodi subjected him to physical sexual abuse in connection with the comments or accusations that she made regarding his alleged sexually explicit behavior and exposure of his genitalia. As a result, Mr. Jones's allegations do not state an Eighth Amendment claim of sexual abuse under *Crawford*.

Accordingly, his Eighth Amendment claim based on verbal sexual harassment is will be dismissed.

### 2. Claim Under the PREA

Mr. Jones contends that the disciplinary report issued to him by LPC Rodi for public indecency "prov[es] PREA violations." Compl. at 5.

The PREA was enacted in 2003 to address the problem of rape in prison by creating a commission to study the issue, to compile data and statistics concerning incidences of prison rape, and to develop and implement national standards for the detection, prevention, reduction, and punishment of prison rape. *See* PREA, 34 U.S.C. §§ 30302-03, 30306-07, formerly 42 U.S.C. §§ 15602-03, 15606-07. The PREA includes no language that grants specific rights to inmates. *See Gonzaga Univ. v. Doe*, 563 U.S. 273, 279-80 (2002) (in the absence of "an 'unambiguous' intent to confer individual rights," such as a right to sue, courts will not imply such a right in a federal funding provision). Consequently, courts within the Second Circuit have

routinely held that there is no private right of action for inmates to sue prison officials for non-compliance with the PREA. *See Miller v. Annucci*, No. 17-CV-4698 (KMK), 2019 WL 4688539, at *10 (S.D.N.Y. Sept. 26, 2019) ("[A]ny independent cause of action under the PREA is dismissed."); *Brown v. Rose*, No. 3:16-CV-00229 (JCH), 2018 WL 3637474, at *7 (D. Conn. July 31, 2018) ("Because the PREA does not create a private right of action for prisoners, Brown cannot show that he was actually injured if Captain Cichetti prevented him from pursuing a PREA claim.") (collecting cases); *Abreu v. Brown*, No. 14-CV-6599, 2018 WL 565280, at *9 (W.D.N.Y. Jan. 22, 2018) (dismissing claim based on violation of PREA because "[n]othing in the statute suggests that PREA intended to establish a private claim for allegations of prison rape, and every court to address the issue has determined that PREA cannot support such a claim by an inmate") (internal quotation marks and citations omitted).

Accordingly, any claim asserted under the PREA will be dismissed.

### 3. Claim Under Administrative Directive 9.5

Mr. Jones contends that LPC Rodi violated Administrative Directive 9.5, titled Code of Penal Discipline. Compl. at 5, 8-9. Under Administrative Directive 9.5[4], sexual harassment is defined as "[r]epeated and unwelcome sexual advances, requests for sexual favors, or verbal comments, gestures, or actions of a derogatory or offensive sexual nature by one inmate directed towards another." Admin. Dir. 9.5(3)(y). It is evident from this definition and others, however, that Administrative Directive 9.5 addresses the conduct of inmates, not correctional staff.

---

[4] State of Connecticut Department of Correction Administrative Directive 9.5, effective as of October 1, 2019, is available on the Department of Correction's website under Directives and Policies at: https://portal.ct.gov/DOC/AD/AD-Chapter-9.

Furthermore, a violation of or failure to follow an administrative directive does not state a claim of a violation of a federal or constitutionally protected right. *See Whitaker v. Evans*, No. 3:19CV1129 (MPS), 2019 WL 6700188, at *3 (D. Conn. Dec. 9, 2019) ("[D]efendants' failure to comply with prison regulations or administrative directives does not constitute a basis for relief under Section 1983 because "a prison official's violation of a prison regulation or policy does not establish that the official has violated the Constitution or is liable to a prisoner under 42 U.S.C. § 1983.") (quoting *Fine v. UConn Med.*, No. 3:18-CV-530 (JAM), 2019 WL 236726, at *9 (D. Conn. Jan. 16, 2019)).

Accordingly, the claim that LPC Rodi violated Administrative Directive 9.5 is dismissed.

### C. Fourteenth Amendment Claims

#### 1. Disciplinary Reports

Mr. Jones alleges that on two occasions in 2019, LPC Rodi issued him disciplinary reports based on false accusations that he had engaged in indecent exposure of his genitalia and sexually explicit behavior. After holding a hearing and viewing the videotape in support of the charge asserted in the February 1, 2019 disciplinary report, the hearing officer concluded that the disciplinary charge must be dismissed because LPC Rodi had not been looking into Mr. Jones's cell when she claimed to have seen him masturbating. Compl. at 7. Mr. Jones does not indicate how prison officials disposed of the second disciplinary report.

As a preliminary matter, the filing or issuance of a false disciplinary "report does not, of itself, implicate the guard who filed it in constitutional violations which occur at a subsequent disciplinary hearing." *Williams v. Smith,* 781 F.2d 319, 324 (2d Cir. 1986) (citation omitted); *see also Boddie,* 105 F.3d at 862 ("[A] prison inmate has no general constitutional right to be free

from being falsely accused in a misbehavior report."). An inmate's protection against false accusations lies in the procedural due process requirements to be applied by prison officials who conduct the disciplinary hearing. There are no facts to suggest that Mr. Jones did not receive procedural due process in connection with the disposition of the disciplinary reports issued by LPC Rodi. *See* Compl. at 3, 6-7.

As a result, any Fourteenth Amendment procedural due process claim will be dismissed.

Mr. Jones's allegations may also be construed as asserting a claim that LPC Rodi defamed him by accusing him of sexual misconduct or branding him as a "pervert" in violation of the Due Process Clause of the Fourteenth Amendment. Compl. at 5. In *Vega v. Lantz*, 596 F.3d 77, 81-82 (2d Cir. 2010), the Second Circuit held that the improper classification of an inmate as a sex offender may have a stigmatizing effect which implicates a liberty interest for purposes of due process. Although defamation is typically a state law claim, the Second Circuit held that "under limited circumstances, federal constitutional relief is available for defamation committed by government officials." *Id.* at 81 (citations omitted).

In order to state a "stigma plus" due process violation, the plaintiff must establish: (1) the "stigma" by demonstrating "the utterance of a statement sufficiently derogatory to injure his or her reputation that is capable of being proved false, and that he or she claims is false," and (2) the "plus" by demonstrating "a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Id.* (internal quotation marks and citation omitted). The "plus" must be something "in addition to the stigmatizing statement." *Id.*

Although Mr. Jones has alleged that LPC Rodi accused him in a disciplinary report of exposing himself and engaging in a sexual act in her presence and that a hearing officer

15

subsequently dismissed the disciplinary charge, he has not asserted any facts showing that he was subjected to an additional, state-imposed burden as a result of these allegedly humiliating and false statements/accusations. In support of his claim, Mr. Jones alleges that "people [have] spread[] rumors about me in prison and [in] the streets" and all of LPC Rodi's "co-workers and prisoners teas[ed] me every day calling me pervert names and people that knew me from the streets stopped talking to me and telling women on the streets not to have dealings with me cause I'm a pervert and probably a rapist." Compl. at 5.

The allegations of stigmatizing statements that led to teasing and injured Mr. Jones reputation inside and outside of prison are insufficient in and of themselves to meet the plus component of the stigma plus standard. *See Balentine v. Tremblay*, 554 F. App'x 58, 60–61 (2d Cir. 2014) ("Moreover, his alleged reputational damage resulting in the loss of private employment, humiliation, and embarrassment are inadequate to satisfy the 'plus' requirement."); *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) ("[D]eleterious effects flowing directly from a sullied reputation, standing alone, do not constitute a plus under the stigma plus doctrine.") (internal quotation marks, citation and brackets omitted); *Moore v. Chapdelaine*, No. 3:15-CV-775 (VAB), 2018 WL 638995, at *7 (D. Conn. Jan. 31, 2018) ("The "plus" must be something more than the consequence of the stigmatizing statement.") (citations omitted); *Hill v. Donoghue*, 815 F. Supp. 2d 583, 589 (E.D.N.Y. 2011) (allegation that inmate's reputation and safety was potentially harmed by labeling him as a government snitch did not constitute deprivation of a tangible interest to meet plus prong of stigma plus claim because potential harm was "abstract" and speculative."), *aff'd*, 518 F. App'x 50 (2d Cir. 2013).

Accordingly, Mr. Jones's Fourteenth Amendment claim based on stigmatizing statements will be dismissed as well.

### 2. Equal Protection

Mr. Jones also asserts LPC Rodi's verbal harassment and public humiliation violated his equal protection rights under Fourteenth Amendment. Compl. at 5.

The Equal Protection Clause of the Fourteenth Amendment "commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985) (internal quotations and citations omitted). When a plaintiff challenges selective enforcement of the law, he must prove (1) "compared with others similarly treated, [he] was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (citations omitted).

Mr. Jones has not alleged that LPC Rodi treated him differently or discriminated against him because of his membership in a protected class or based on some suspect classification.

Absent allegations to support "class-based" discrimination, an individual may state an equal protection claim by alleging that he or she has been intentionally and "irrationally singled out as a . . . class of one." *Engquist v. Or. Dep't of Agric.,* 553 U.S. 591, 601 (2008). A plausible class of one claim requires the plaintiff to demonstrate an "'extremely high degree of similarity'" with the person to whom he or she is comparing himself or herself. *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144,

159 (2d Cir. 2006)). Thus, a plaintiff must demonstrate the existence of a person who is "prima facie identical" to him or her and who was treated differently. *Hu v. City of New York*, 927 F.3d 81, 92 (2d Cir. 2019) (internal quotation marks and citation omitted).

Mr. Jones does not identify another inmate who was essentially identical to him and who was treated differently. As a result, the facts in the Complaint do not state a plausible class-based equal protection claim or a plausible class of one equal protection claim against LPC Rodi.

Accordingly, his claim alleging violation of the Fourteenth Amendment's Equal Protection Clause will be dismissed.

### D. State Law Claims

To the extent that any state law claims remain, the Court declines to exercise supplemental jurisdiction over them because it has dismissed all federal claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."); *Carnegie-Mellon Univ. v. Cohilli*, 484 U.S. 343, 350 (1988) ("[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.").

## IV. CONCLUSION

For the reasons explained above, the Court **DENIES** Mr. Jones's motion for a temporary restraining order, [**ECF No. 11**]. Mr. Jones is not precluded from pursuing the claims or the relief requested in the motion in a separate action.

The Court **VACATES** Judge Richardson's order granting Mr. Jones's motion to proceed

*in forma pauperis*, [**ECF No. 9**], to the extent that Judge Richardson concluded that the claims asserted in the Complaint were sufficient to proceed to service of process on LPC Rodi.

For the reasons explained above, the Court also **DISMISSES** the claims under the Eighth Amendment, the First Amendment, the Fourteenth Amendment, the PREA, and Administrative Directive 9.5 under 28 U.S.C. § 1915A(b), and declines to exercise supplemental jurisdiction over any remaining state law claims.

The Clerk of Court is respectfully directed to close this case.

Mr. Jones may move to reopen along with an amended complaint by **June 5, 2020**.

If Mr. Jones does not comply with this order, the dismissal of this case is with prejudice.

**SO ORDERED** at Bridgeport, Connecticut, this 10th day of April, 2020.

/s/ Victor A. Bolden

VICTOR A. BOLDEN