UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DASHANTE SCOTT JONES,
*Plaintiff*,

v.

LPC RODI,
*Defendants*.

No. 3:19-cv-1866 (VAB)

**RULING AND ORDER ON MOTIONS TO AMEND AND AMENDED COMPLAINT**

Dashante Scott Jones ("Plaintiff"), currently confined at the MacDougall-Walker Correctional Institution, *see* Notice, ECF No. 22 (June 4, 2021), initiated this action on November 22, 2019, filing a civil rights Complaint *pro se* under 42 U.S.C. § 1983 against Ms. Rodi LPC. Compl., ECF No. 1 (Nov. 22, 2019). At that time, he was not confined in a prison facility and resided in Hartford, Connecticut. Compl. at 1.

The Court ultimately dismissed all of Mr. Jones's claims in its Initial Review Order, *see* ECF No. 12 (Apr. 10, 2020) ("IRO"), but gave Mr. Jones the opportunity to move to reopen the case with an amended complaint should he be able cure the deficiencies identified in the Court's review, *see* Order, ECF No. 15 (Aug. 3, 2020).

Mr. Jones has now filed two motions, seeking to reopen this case with an amended complaint. *See* Mot. for Leave to File Am. Compl., ECF No. 20 (Oct. 9, 2020) ("First Mot."); Mot. to File Am. Compl., ECF No. 21 (Oct. 15, 2020) ("Second Mot.").

For the reasons set forth below, the Court **GRANTS** the first motion to amend and **DENIES** the second motion to amend.

1

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

    a.  **Procedural History**

On April 10, 2020, the Court reviewed the Complaint under 28 U.S.C. § 1915(e)(2)(B), dismissing Mr. Jones's First, Eighth, and Fourteenth Amendment claims, his Prison Rape Elimination Act ("PREA") claim, and his claim under State of Connecticut Department of Correction Administrative Directive 9.5. IRO. The Court declined to exercise supplemental jurisdiction over any remaining state law claims, and directed the Clerk of Court to close the case. *Id.* at 19. The Court informed Mr. Jones that he could move to reopen the case and to file an amended complaint by June 5, 2020, if he could correct the deficiencies identified by the Court in its Initial Review Order. *Id.*

On May 7, 2020, Mr. Jones moved to reopen his case. Mot. to Reopen Case, ECF No. 14 (May 7, 2020).

On August 3, 2020, the Court denied Mr. Jones motion without prejudice to renewal because Mr. Jones alleged that he had not received the Court's Initial Review Order. Order, ECF No. 15 (Aug. 3, 2020).

On September 14, 2020, Mr. Jones moved to stay his case. Mot. to Pause Case, ECF No. 17 (Sept. 14, 2020).

On September 23, 2020, the Court granted in part and denied in part Mr. Jones's motion, granting him until October 22, 2020 to file a motion to reopen and a proposed amended complaint. Order, ECF No. 18 (Sept. 23, 2020).

On October 9, 2020 and October 15, 2020, Mr. Jones filed motions to amend. First Mot.; Second Mot.

### b. Factual Allegations

The allegations asserted in the Amended Complaint, like the allegations asserted in the Complaint, arise out of Mr. Jones's prior incarceration at Garner Correctional Institution ("Garner") during a period from February to May 2019. First Mot. at 4.[1] He asserts federal constitutional claims and state tort law claims against LPC Rodi. *See id.*

Mr. Jones alleges that, as of February 1, 2019, he was confined in the segregation unit at Garner. *Id.* at 7-8 ¶¶ 1-4. Before that date, Mr. Jones alleges that he argued with LPC Rodi about performing her job as a mental health worker during her tours of the segregation unit. *Id.* at 7 ¶¶ 1-3. Allegedly, Mr. Jones was upset because each time that LPC Rodi visited the segregation unit, she proceeded directly to the officers' station in the segregation unit and conversed with the officers instead of stopping at his cell and speaking to him about his mental health issues. *Id.* Mr. Jones allegedly complained to Deputy Warden Borges and Unit Manager Hurtle about LPC Rodi's failure to respond to his requests for mental health treatment during her tours of the segregation unit. *Id.* ¶ 4.

Mr. Jones alleges that, on February 1, 2019, after LPC Rodi learned that Mr. Jones had complained to her supervisors about alleged deficient job performance, she allegedly rushed to Mr. Jones's cell, called him a f***ing pervert, and stated that she would be issuing him a disciplinary report to ensure that he would remain in the segregation unit until the date that he discharged from prison. *Id.* at 7-8 ¶¶ 4-5. Later that day, LPC Rodi allegedly issued Mr. Jones a disciplinary report for public indecency. *Id.* at 8 ¶ 6. At a hearing held on February 6, 2019, Mr. Jones allegedly pleaded not guilty to the disciplinary charge. *Id.* After reviewing the evidence,

---

[1] For clarity, all page citations to the first motion to amend, ECF No. 20, refer to the pagination of the Court's electronic filing system.

including video footage of the incident during which Mr. Jones allegedly engaged in indecent behavior, the hearing officer allegedly dismissed the disciplinary charge. *Id.* at 8 ¶¶ 6-7.

Allegedly, on April 12, 2019, LPC Rodi approached Mr. Jones's cell and stated: "I got you now pervert I am at your door they dismissed the last ticket not this one." *Id.* at 8 ¶¶ 8-9. LPC Rodi allegedly issued Mr. Jones a disciplinary report for public indecency. *Id.* A hearing officer allegedly found Mr. Jones guilty of the disciplinary charge. *Id.* at 8 ¶ 10. After the guilty finding, LPC Rodi and her co-worker allegedly continued to "bother[]" Mr. Jones. *Id.*

Mr. Jones alleges that prison officials at Garner discharged him from his prison sentence "around" June 27, 2019. *Id.* at 8. A notice filed by Mr. Jones in another federal case, however, reflects that he had been discharged from the Department of Correction at the latest on May 29, 2019. *See Jones v. Hakins*, Case No. 3:19-cv-221(VAB), ECF No. 10 (May 29, 2019).[2]

## II.   STANDARD OF REVIEW

Under 28 U.S.C. § 1915(e)(2)(B), a district court "shall dismiss [a] case at any time if the court determines that" the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." *Id.* Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555,

---

[2] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012).

4

570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

### III.   DISCUSSION

#### A.  Motions to Amend

In both motions, Mr. Jones seeks leave to file an Amended Complaint to address the deficiencies identified by the Court in its review of the allegations asserted in the Complaint. First Mot.; Second Mot. Attached to the first motion to amend is a proposed amended complaint that names LPC Mental Health Worker Rodi ("LPC Rodi") as the only defendant. *See* First Mot. Mr. Jones did not attach a proposed Amended Complaint to the second motion to amend. As the Court's orders required Mr. Jones to provide an Amended Complaint to reopen this case, the

5

second motion to amend is deficient. Accordingly, the second motion is denied.

"[C]onstrued liberally and interpreted to raise the strongest arguments [it] suggests," the first motion seeks to reopen the case with the attached amended complaint. *Sykes*, 723 F.3d at 403. The Court's previous order provided Mr. Jones with the opportunity to reopen his case "provided he c[ould] cure the deficiencies identified in the Initial Review Order and assert allegations that state a plausible federal claim against LPC Rodi." Order, ECF No. 15. Consistent with this order, the Court will review the sufficiency of Mr. Jones's Amended Complaint to determine whether this case should be reopened.

### B. Amended Complaint

Mr. Jones contends that LPC Rodi retaliated against him on two occasions in violation of his First Amendment right; was deliberately indifferent to his mental health needs in violation of the Eighth Amendment, sexually harassed him in violation of the Eighth Amendment; and denied him due process in violation of the Fourteenth Amendment. He also asserts libel and medical malpractice claims under Connecticut law. *See* First Mot. Mr. Jones seeks punitive and compensatory damages and/or an order that LPC Rodi be imprisoned for ninety days for libeling him. *See id.* at 10.

#### 1. Official Capacity Relief

Mr. Jones sues LPC Rodi in her individual and official capacities. The requests seeking compensatory and punitive damages from the defendant in her official capacity for violations of Mr. Jones's federal constitutional rights are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (recognizing that any claims for money damages against the defendants, who are state employees, in their official capacities are barred by the Eleventh Amendment); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (holding that Section 1983 does not

override a state's Eleventh Amendment immunity).

Accordingly, the official capacity requests for monetary damages from the defendant in her official capacity for violating Mr. Jones's First, Eighth, and Fourteenth Amendment rights will be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii).

### 2. First Amendment – Retaliation

Mr. Jones alleges that the LPC Rodi issued a disciplinary report to him on February 1, 2019 because he had exercised his right to freely speak and complain to a unit manager and a deputy warden about her failure to respond to inmate requests for mental health treatment during her tours of the segregation unit prior to February 1, 2019. Mr. Jones contends that LPC Rodi's decision to issue him a second disciplinary report for public indecency on April 12, 2019 also was retaliatory.

The Second Circuit has "instructed district courts to 'approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official-even those otherwise not rising to the level of a constitutional violation-can be characterized as a constitutionally proscribed retaliatory act.'" *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quoting *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir. 2003)). Retaliation claims "stated in wholly conclusory terms" are insufficient. *Id.* (internal quotation marks and citations omitted). To plead a First Amendment retaliation claim, an inmate must plausibly allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Id.* at 294 (internal quotation marks and citation omitted).

An inmate's informal written complaint or request as well as a formal written grievance constitutes "a protected activity" under the First Amendment. *Brandon v. Kinter*, 938 F.3d 21, 40

7

(2d Cir. 2019) (citing *Davis*, 320 F.3d at 352-53). However, "the Second Circuit has yet to articulate a bright line rule regarding constitutionally protected oral speech by an inmate." *Booker v. Griffin*, No. 16-CV-00072 (NSR), 2018 WL 1614346, at *17 (S.D.N.Y. Mar. 31, 2018) (citations omitted). District courts within this Circuit have concluded that "[i]n some circumstances this protection extends beyond the filing of formal grievances to oral complaints made to corrections officers." *Tirado v. Shutt*, No. 13CV2848-LTS-AJP, 2015 WL 4476027, at *4 (S.D.N.Y. July 22, 2015); *see also Gomez v. Dep't of Corr.*, No. 3:20-CV-00958 (JAM), 2020 WL 6526108, at *3 (D. Conn. Nov. 4, 2020) ("A prisoner has a right under the First Amendment to complain about prison conditions, especially conditions that the prisoner believes endanger his health and safety."); *McMillian v. Cty. of Onondaga*, No. 9:13-CV-1124 TJM/ATB, 2015 WL 1403459, at *10–11 (N.D.N.Y. Mar. 26, 2015) ("There is support for the proposition that an inmate's verbal complaints might serve as the basis for a section 1983 retaliation claim."), *report and recommendation adopted*, 2016 WL 9781807 (N.D.N.Y. Mar. 29, 2016), *aff'd*, 710 F. App'x 458 (2d Cir. 2017). Accordingly, for purposes of this review, the Court will assume that Mr. Jones's verbal complaints about the conduct of LPC Rodi constitute protected speech.

Mr. Jones alleges that LPC Rodi issued him a disciplinary report on February 1, 2019 because she was upset that he had informed her supervisors that she had not been adequately performing her job. He contends that she stated that it was her intention to keep him in the segregation unit until he was discharged from his sentence by issuing him a disciplinary report. A disciplinary hearing officer dismissed the report five days later without imposing any sanctions. The Court concludes that Mr. Jones has asserted facts to demonstrate a retaliatory motive on the part of LPC Rodi in issuing him a disciplinary report on February 1, 2019. *See,*

*e.g.*, *Bennett v. Goord,* 343 F.3d 133, 138-39 (2d Cir. 2003) (holding the plaintiff met his burden to prove retaliatory motive through evidence relating to the "temporal proximity" between protected activity and the "favorable settlement of his lawsuit"). Accordingly, the Court will permit this First Amendment retaliation claim to proceed.

Additionally, more than two months after a hearing officer dismissed the first disciplinary charge for public indecency, LPC Rodi allegedly issued Mr. Jones a second report charging him with the same disciplinary infraction. Mr. Jones contends that LPC Rodi issued the second disciplinary report because she was upset that a hearing officer had dismissed the first disciplinary report and in retaliation for his prior complaints made to a unit manager and deputy warden about her inadequate job performance. Mr. Jones concedes that a hearing officer subsequently found him guilty of the disciplinary charge. The Court concludes that Mr. Jones has asserted facts to support an inference that the defendant's alleged adverse action, issuing him a second disciplinary report for public indecency, was motivated by, or temporally related to, protected conduct, namely the exercise of his right to assert a grievance or complaint. The Court will permit this First Amendment retaliation claim to proceed as well.

### 3. Eighth Amendment – Mental Health Treatment

The Eighth Amendment's Cruel and Unusual Punishment Clause prohibits "'deliberate indifference'" by medical providers to an inmate's "'serious medical needs'" as well as an inmate's "need[] for mental health care." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)). An inmate must meet two elements to state a claim that a prison official or medical provider was deliberately indifferent to his or her medical or mental health needs. The objective element requires the inmate to assert facts to demonstrate that his or her medical or mental health need is serious. *Hill*

9

*v. Curcione*, 657 F.3d 116, 122–23 (2d Cir. 2011) (holding a serious medical need contemplates "a condition of urgency" such as "one that may produce death, degeneration, or extreme pain" (internal quotation marks and citation omitted)). In determining whether a medical or mental health condition is serious, the Court considers whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted).

The second element is subjective. To meet this element, the inmate must allege that the prison official or medical provider was actually aware that his or her actions or inactions would cause a substantial risk of serious harm. *See Hill*, 657 F.3d at 122 (citation omitted). Mere negligent conduct, however, does not constitute deliberate indifference. *Id.* at 123.

Mr. Jones alleges that LPC Rodi's job involved meeting with inmates in the segregation unit, listening to and addressing their mental health issues, and preventing inmates from attempting to commit suicide. First Mot. at 7. He alleges that when LPC Rodi entered the segregation unit, he would make her aware that he suffered from a serious mental health condition, but she never stopped at his cell to speak to him or to offer him treatment. Mr. Jones argues that LPC Rodi denied him mental health treatment during his confinement in the segregation unit prior to February 1, 2019 in violation of the Eighth Amendment.

Mr. Jones does not identify his mental health condition with any specificity other than to suggest that it was a serious condition and that the failure of LPC Rodi to speak to him or offer him treatment during his confinement in the segregation unit prior to February 2019 exacerbated his condition. First Mot. at 10. Although these allegations are sparse, the Court liberally construes them to state a claim that LPC Rodi denied him treatment for a serious mental health

10

need during his confinement in the segregation unit prior to February 1, 2019. The Court will permit this Eighth Amendment deliberate indifference claim to proceed for further development of the record.

### 4. Eighth Amendment – Sexual Harassment

Allegations of verbal sexual harassment or comments do not state a claim under the Eighth Amendment. *See Trowell v. Theodarakis*, No. 3:18CV446(MPS), 2018 WL 3233140, at *3 (D. Conn. July 2, 2018) (finding allegations that correctional officer had called the plaintiff "derogatory names based on [plaintiff's] sexual orientation" did not state claim of sexual abuse under Eighth Amendment); *Keaton v. Ponte*, No. 16 CIV. 3063 (KPF), 2017 WL 3382314, at *10 (S.D.N.Y. Aug. 4, 2017) (dismissing prisoner's Eighth Amendment claims of sexual abuse against female corrections because "[v]erbal harassment, without more, [wa]s not actionable under § 1983" (internal quotation marks omitted)); *Jones v. Harris*, 665 F. Supp. 2d 384, 396 (S.D.N.Y. 2009) (finding "verbal sexual harassment of a prisoner, without physical contact, does not violate the Eighth Amendment," and collecting cases).

Mr. Jones reasserts his allegation that LPC Rodi engaged in sexual harassment. First Mot. at 9. Mr. Jones does not assert facts to suggest that LPC Rodi subjected him to physical sexual abuse in connection with the comments or accusations that she made regarding his alleged sexually explicit or indecent behavior. But Mr. Jones's allegations regarding comments and accusations made by LPC Rodi regarding his sexually suggestive or indecent behavior do not state an Eighth Amendment claim of sexual abuse.

Accordingly, Mr. Jones's Eighth Amendment claim of verbal sexual harassment will be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii).

### 5. Fourteenth Amendment

In his description of claims, Mr. Jones alleges that he is suing LPC Rodi for a violation of his Fourteenth Amendment rights. First Mot. at 8. He does not further elaborate on this claim.

To the extent that he intended to assert a procedural due process claim arising from the issuance of the two disciplinary reports charging him with public indecency, the "filing of a false [disciplinary] report does not, of itself, implicate the guard who filed it in constitutional violations which occur at a subsequent disciplinary hearing." *Williams v. Smith,* 781 F.2d 319, 324 (2d Cir. 1986) (citation omitted); *see also Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) ("[A] prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report."). An inmate's protection against false accusations lies in the procedural due process requirements to be applied by prison officials who conduct the disciplinary hearing.

There are no facts to suggest that Mr. Jones did not receive procedural due process in connection with the disposition of either disciplinary report issued by LPC Rodi. Nor are there allegations that LPC Rodi was involved in the hearings held to address the disciplinary charges or the decisions regarding the disposition of the charges.

Accordingly, any Fourteenth Amendment procedural due process claim arising from the LPC Rodi's issuance of the two disciplinary reports will be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii).

### 6. Remaining Federal Claims

Rule 21 of the Federal Rules of Civil Procedure provides that a court "may . . . sever any claim against a party" upon the filing of a motion by a party to the action or on its own. Fed. R. Civ. P. 21. In exercising its discretion to decide whether to sever a claim, a court should weigh

the following factors: "(1) [whether] the claims arise out of the same transaction or occurrence; (2) [whether] the claims present some common question of law or fact; (3) whether settlement of the claims or judicial economy be facilitated; (4) whether prejudice would be avoided; and (5) [whether] different witnesses and documentary proof are required for the separate claims." *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 263 (D. Conn. 2012).

Mr. Jones includes new facts related to his placement in the segregation unit on Chronic Discipline Status due to his receipt of additional disciplinary reports issued by other unidentified correctional officials who worked at Garner. First Mot. at 9. State of Connecticut Department of Correction Administrative Directive 9.4(3)(H) describes Chronic Discipline as "[a] restrictive housing status that results in management of an inmate whose behavior, while incarcerated, poses a threat to the security and orderly operation of the facility, or a risk to the safety of staff or other inmates due to repetitive disciplinary infractions." *Administrative Directive Chapter 9 Classification*, Conn. Dept. of Corr., https://portal.ct.gov/DOC/AD/AD-Chapter-9 (last visited July 22, 2021).[3]

Mr. Jones does not allege that LPC Rodi, who is a mental health worker, was involved in his placement on Chronic Discipline Status or in subjecting him to the restrictive conditions of confinement associated with such a placement. Under Administrative Directive 9.4, the decision to place an inmate on Chronic Discipline Status is made by the Director of Offender and Classification Management after a hearing. *See id*. Mr. Jones describes various conditions that he endured on Chronic Discipline Status, including limited recreational opportunities; no family

---

[3] The Court takes judicial notice of Administrative Directive 9.4, effective June 16, 2016. *Administrative Directive Chapter 9 Classification*, Conn. Dept. of Corr., https://portal.ct.gov/DOC/AD/AD-Chapter-9 (last visited July 22, 2021; *see also Nicholson v. Murphy*, No. 3:02-cv-1815 (MRK), 2003 WL 22909876, at *7 n.2 (D. Conn. Sept. 19, 2003) (taking judicial notice of Administrative Directives as "written guidelines, promulgated [under] Connecticut General Statutes § 18–81, establishing the parameters of operation for Connecticut facilities.").

visits; loss of commissary privileges; confinement in a cold cell with a toilet that emitted a foul odor; cold showers; and lack of access to cleaning materials, a television, the library, educational and other programs, and congregate religious services. First Mot. at 9-10. The Court therefore concludes that the allegations pertaining to Mr. Jones's placement on Chronic Discipline Status and the conditions that endured during his confinement on that status are unrelated to the allegations that LPC Rodi denied him mental health treatment and retaliated against him in February and April 2019 by issuing him two false disciplinary reports.

The claims that arise from Mr. Jones's alleged placement on Chronic Discipline Status on an unspecified date due to disciplinary reports issued by unidentified correctional employees and the conditions that he endured during his confinement on Chronic Discipline Status are not related to the retaliation and denial of mental health care claims asserted against LPC Rodi, the only defendant named in the amended complaint.

Rather, these claims involve placement on a restrictive housing status, deliberate indifference to health, deprivations of basic human needs and denial of access to religious services and educational programs by individuals who are not named as defendants. The claims asserted against LPC Rodi and the claims arising from Mr. Jones's placement on Chronic Discipline Status share no common legal or factual questions. Thus, the two sets of claims should be considered in separate actions.

Accordingly, all First, Eighth, and Fourteenth Amendment claims related to Mr. Jones's placement on Chronic Discipline Status at Garner and the conditions that he endured while confined on that status will be dismissed without prejudice as improperly joined in this action.

### 7. State Law Claims

Mr. Jones contends that the conduct of defendant LPC Rodi underlying his First Amendment retaliation claims and his Eighth Amendment deliberate indifference to mental health needs claim also supports state law claims of libel and medical malpractice. First Mot. at 10. For relief, Mr. Jones seeks compensatory and punitive damages from the defendant in her individual and official capacity and injunctive relief from the defendant in her official capacity.

With regard to Mr. Jones's requests seeking monetary damages from the defendant in her official capacity for engaging in libelous conduct and medical malpractice, "[t]he principle that the state cannot be sued without its consent, or sovereign immunity, is well established under" Connecticut law. *DaimlerChrysler Corp. v. L.*, c, 711–13 (2007) ("[A] litigant that seeks to overcome the presumption of sovereign immunity must show that (1) the legislature, either expressly or by force of a necessary implication, statutorily waived the state's sovereign immunity . . . or (2) in an action for declaratory or injunctive relief, the state officer or officers against whom such relief is sought acted in excess of statutory authority, or pursuant to an unconstitutional statute"). The principle of sovereign immunity applies both to lawsuits seeking monetary damages against the state and to lawsuits seeking monetary damages against state officials in their official capacities. *See Miller v. Egan*, 265 Conn. 301, 313 (2003) ("[A] suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state.").

Mr. Jones does not allege that the defendant or the State of Connecticut has waived sovereign immunity as to the claims of libel or medical malpractice. *Id.* at 314 ("[T]o circumvent the doctrine of sovereign immunity" for a claim for money damages asserted against the state or a state officer in his or her official capacity, a plaintiff must show that the legislature "statutorily

waived the state's sovereign immunity."). Furthermore, absent "a statutory waiver of sovereign immunity, a plaintiff may not bring an action against the state for monetary damages without authorization from the claims commissioner to do so." *Columbia Air Serv. v. DOT*, 293 Conn. 342, 351 (2009). Mr. Jones does not allege that he sought or received authorization from the Office of the Claims Commissioner to sue the defendant in her official capacity for monetary damages.

Accordingly, the requests seeking money damages from the defendant in her official capacity for libel and medical malpractice will be dismissed as barred by sovereign immunity under 28 U.S.C. § 1915(e)(2)(B)(i).

Mr. Jones also seeks injunctive relief in the form of an order that the defendant serve ninety days in prison for asserting libelous statements against him. First Mot. at 8, 10. As an initial matter, research has revealed no support for Mr. Jones's contention that an individual who has engaged in the tort of libel or written defamation under Connecticut law may be imprisoned for a period of time up to ninety days. Furthermore, this request for injunctive relief is barred by the Eleventh Amendment. *See Vega v. Semple*, 963 F.3d 259, 284 (2d Cir. 2020) ("To the extent Plaintiffs seek prospective relief against Defendants in their official capacity for violations of the Connecticut Constitution and state law, those claims are indeed barred by the Eleventh Amendment . . ." (internal quotation marks omitted)).

Accordingly, the request for injunctive relief associated with Mr. Jones's state-law libel claim will be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii).

Moreover, "[m]edical malpractice is a type of negligence claim." *Acevedo v. Ruiz*, No. 3:18-CV-1583 (VLB), 2018 WL 6181350, at *2 (D. Conn. Nov. 27, 2018) (citing *Gallinari v. Kloth*, 148 F. Supp. 3d 202, 208 (D. Conn. 2015) (collecting cases)). "Connecticut General

Statutes § 4-165 bars negligence claims against state employees acting within the scope of their employment," and "[t]hus, the malpractice claim against [state employees] in their individual capacities is barred." *Id.* Additionally, "Connecticut General Statute § 52-190a requires that plaintiff submit a good faith certificate and a health care provider's detailed opinion that the actions of the defendants constitute medical negligence." *Id.* at *3. "The absence of such a letter requires dismissal of the claim without prejudice. *Id.* (citing *Gallinari*, 148 F. Supp. 3d at 206-08).

Accordingly, the Court will also dismiss Mr. Jones's medical malpractice against LPC Rodi in her individual capacity.

As for Mr. Jones's libel claim, because the First Amendment retaliation and Eighth Amendment deliberate indifference to mental health needs claims are proceeding against LPC Rodi, the Court will exercise supplemental jurisdiction over Mr. Jones's state law claim of libel to the extent that the claims are asserted against LPC Rodi in her individual capacity. *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related...."); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725–29 (1966) (holding district courts may maintain supplemental jurisdiction over state law claims when the claims "derive from a common nucleus of operative fact" as the federal claims).

## ORDERS

The Court enters the following orders:

**(1)** Mr. Jones's first motion for leave to file amended complaint, ECF No. 20, construed as both a request to reopen the case and as a request to file an amended complaint, is **GRANTED**. The Clerk of Court is respectfully directed to reopen the case and docket the

proposed amended complaint attached to the motion as the operative Amended Complaint. Mr. Jones's second motion to file amended complaint, ECF No. 21, is **DENIED**.

The Eighth Amendment sexual harassment claim, the Fourteenth Amendment due process claims; the request for injunctive relief, asserted in the Amended Complaint; and the medical malpractice claim are **DISMISSED** under 28 U.S.C. § 1915(e)(2)(B)(ii). The requests for punitive and compensatory damages from the defendant in her official capacity for violations of Mr. Jones's federal constitutional rights and for engaging in libelous conduct and medical malpractice under state law, asserted in the Amended Complaint, are **DISMISSED** under 28 U.S.C. § 1915(e)(2)(B)(i). The First, Eighth, and Fourteenth Amendment claims related to Mr. Jones's placement on Chronic Discipline Status at Garner and the conditions that he endured while confined on that status are **SEVERED** and **DISMISSED** from the Amended Complaint without prejudice under Federal Rule of Civil Procedure 21. If Mr. Jones seeks to pursue these claims, he must do so by filing a separate lawsuit.

The First Amendment retaliation claims stemming from the issuance of a disciplinary report on February 1, 2019 and the issuance of a disciplinary report on April 12, 2019; the Eighth Amendment deliberate indifference to mental health needs claim; and the state law claim of the libel will proceed against LPC Rodi in her individual capacity.

**(2)** By **August 20, 2021**, the Clerk of Court shall verify the current work address of LPC Mental Health Worker Rodi and mail a copy of the Complaint, ECF No. 1; the Initial Review Order, ECF No. 12; the Amended Complaint; this Ruling and Order; and a waiver of service of process request packet to the defendant in her individual capacity at her confirmed address. By **September 24, 2021**, the Clerk shall report to the Court on the status of the request. If the defendant fails to return the waiver request, the Clerk shall make arrangements for in-

person service by the U.S. Marshals Service and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

**(3)** Defendant Rodi shall file her response to the Amended Complaint, either an answer or motion to dismiss, within **thirty (30) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to her. If the defendant chooses to file an answer, she shall admit or deny the allegations and respond to the cognizable claims recited above. She may also include any and all additional defenses permitted by the Federal Rules.

**(4)** Discovery, under Federal Rules of Civil Procedure 26 through 37, shall be completed by **January 28, 2022**. Discovery requests need not be filed with the Court.

**(5)** All motions for summary judgment shall be filed by **February 25, 2022**.

**(6)** If Mr. Jones changes his address at any time during the litigation of this case, Local Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. Mr. Jones should write PLEASE NOTE MY NEW ADDRESS on the notice and should also notify the defendants or the attorney for the defendants of his new address.

**(7)** Mr. Jones shall utilize the Prisoner Efiling Program when filing documents with the Court. Mr. Jones is advised that the Program may be used only to file documents with the Court. Local Rule 5(f) provides that discovery requests are not to be filed with the Court. Therefore, discovery requests must be served on the defendant's attorney by regular mail.

**(8)** The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy of the Standing Order to the parties. The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders.

**(9)** **The Clerk shall** send a courtesy copy of the Complaint, the Initial Review Order, the Amended Complaint, and this Ruling and Order to the Connecticut Attorney General and to the Department of Correction Legal Affairs Unit.

SO ORDERED at Bridgeport, Connecticut this 30th day of July, 2021.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE