UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DASHANTE SCOTT JONES,
    *Plaintiff*,

    v.

LPC RODI,
    *Defendant*.

No. 3:19-cv-1866 (VAB)

**RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

Dashante Scott Jones ("Plaintiff"), currently incarcerated at MacDougall-Walker Correctional Institution and proceeding *pro se*, has sued LPC Rodi ("Defendant"), a mental health counselor employed by the Connecticut Department of Correction. Am. Compl., ECF No. 24. Mr. Jones asserts claims for violations of his federal constitutional rights under 42 U.S.C. § 1983 and defamation under Connecticut law arising from disciplinary reports that LPC Rodi filed against Mr. Jones while he was incarcerated at Garner Correctional Institution ("Garner"). *Id.*

LPC Rodi has moved for summary judgment, arguing that Mr. Jones failed to exhaust his administrative remedies and that his First Amendment retaliation and defamation claims fail on the merits. Def.'s Mot. for Summ. J., ECF No. 40 ("Mot.").

For the following reasons, LPC Rodi's motion for summary judgment is **DENIED**.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

   A. **Factual Background**[1]

Between February 23, 2018, and May 28, 2019, Mr. Jones was a sentenced prisoner in the custody of the Connecticut Department of Correction and housed at Garner. Def.'s L.R. 56(a)1 Statement of Undisputed Material Facts ¶¶ 1–2, ECF No. 40-2 ("Def.'s SMF"). During this time, Mr. Jones received multiple disciplinary reports for allegedly masturbating in view of correctional staff. *Id.* ¶¶ 3–7. And, during a broader period of incarceration ranging from January 1, 2013, to January 31, 2019, Mr. Jones was adjudicated to be guilty of public indecency on nine separate occasions. *Id.* ¶ 6.

While Mr. Jones was incarcerated at Garner, LPC Rodi worked there as a mental health professional. Am. Compl. at 5, ¶¶ 1–3. According to Mr. Jones, LPC Rodi refused to provide him with mental health treatment when she toured his housing unit. *Id.* In early 2019, Mr. Jones alleges that he orally complained about LPC Rodi's conduct to his correctional supervisors. *Id.* ¶ 4. Soon thereafter, LPC Rodi allegedly "rush[ed]" to Mr. Jones's cell and stated: "Since you

---

[1] The facts noted within this Order are drawn from the operative Amended Complaint and LPC Rodi's Local Rule 56(a)1 Statement of Undisputed Material Facts and supporting exhibits. Am. Compl.; Def.'s L.R. 56(a)1 Statement of Undisputed Material Facts, ECF No. 40-2. Although Plaintiff has responded to LPC Rodi's summary judgment motion, he has not filed a Local Rule 56(a)2 Statement of Facts in Opposition to Summary Judgment. *See* Pl.'s Obj. to Def.'s Mot. for Summ. J., ECF No. 42 ("Opp'n"). LPC Rodi's summary judgment filings include a Notice to Self-Represented Litigant, as required by Local Rule 56(b). ECF No. 40-7. This Notice informed Mr. Jones of the requirement to support denials of the movant's version of facts with evidence and also warned him that a failure to submit evidence in support of his denials of fact could result in the Court granting summary judgment to LPC Rodi if her motion showed that she was entitled to judgment as a matter of law. *Id.* Because Plaintiff has not complied with Local Rule 56(a)2, all material facts set forth in LPC Rodi's Local Rule 56(a)1 Statement are deemed admitted the extent that they are supported by the evidence submitted in support of summary judgment and not contradicted by sworn allegations of fact within Mr. Jones's personal knowledge in the operative complaint. *See* D. Conn. L. Civ. R. 56(a)1 ("Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted . . . unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule . . . ."); *see also Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (When ruling on a summary judgment motion, a court may consider a plaintiff's sworn pleading "to the extent that it makes allegations on the basis of the plaintiff's personal knowledge, and not merely on information and belief.").

want to complain to supervisors about me you['re] getting a ticket and I will make sure you stay in segregation until you[r] discharge." *Id.* at 5–6, ¶ 4.

On February 1, 2019, LPC Rodi issued Mr. Jones a disciplinary report for public indecency. *Id.* at 6, ¶ 7. In her report, LPC Rodi alleged that Mr. Jones had, that day, masturbated in the direction of his cell window while she conducted a clinical tour of his housing unit. Ex. A to Kingsley Decl. at 14, ECF No. 40-5. Mr. Jones disputes LPC Rodi's disciplinary report allegations and contends that she filed a false report against him because of his prior oral complaints regarding her job performance. Am. Compl. at 6, ¶¶ 5–7; Def.'s SMF ¶ 8.

After a disciplinary hearing on February 6, 2019, Mr. Jones was found "not guilty" of public indecency. Ex. A to Kingsley Decl. at 11. This administrative finding was supported by video evidence showing that LPC Rodi did not actually look into the cell in which Mr. Jones was allegedly masturbating. *Id.*

On February 21, 2019, Mr. Jones filed a "Level 1" administrative grievance alleging that LPC Rodi had filed a false disciplinary report against him. *Id.* at 8. Although the grievance asserted that LPC Rodi had made "false, untrue sexual comments" about Mr. Jones in her February 1, 2019, disciplinary report, it did not assert or suggest that LPC Rodi made these allegedly false statements with a retaliatory motive. *Id.* The only asserted motivation for LPC Rodi's alleged misconduct was sexual harassment. *Id.*

On April 1, 2019, D.A. Erfe denied Mr. Jones's Level 1 grievance on the ground that, "[j]ust because there was not enough evidence to find guilt in the DR process it does not constitute sexual harassment by staff." *Id.*

On April 3, 2019, Mr. Jones filed a "Level 2" appeal from the denial his Level 1 grievance. *Id.* at 18. This appeal also did not allege that LPC Rodi acted with a retaliatory motive

when she issued her disciplinary report on February 1, 2019. *Id.* Mr. Jones's appeal was denied on May 2, 2019. *Id.*

On April 12, 2019, LPC Rodi issued another disciplinary report against Mr. Jones for public indecency. Def.'s SMF ¶ 14. On the day that she filed this report, LPC Rodi allegedly visited Mr. Jones's cell and stated: "I got you now pervert now I am at your door they dismissed the last ticket not this one." Am. Compl. at 6, ¶¶ 8–9. Mr. Jones was ultimately adjudicated to be guilty of the conduct alleged in LPC Rodi's second disciplinary report. *Id.*; Ex. A to Kingsley Decl. at 21.

Mr. Jones never filed an administrative grievance related to LPC Rodi's April 12, 2019 disciplinary report. Def.'s SMF ¶ 15. Mr. Jones also never filed a medial grievance asserting that he was denied mental health treatment by LPC Rodi at any point during his confinement. *Id.* ¶ 16.

### B. Procedural History

Mr. Jones filed his *pro se* Complaint against LPC Rodi on November 22, 2019. Compl., ECF No. 1. Although Mr. Jones was incarcerated throughout the events alleged in the Complaint and is currently incarcerated, he was not incarcerated when he filed his Complaint. *Id.* at 1 (showing that Mr. Jones's address was not a correction facility); Nadeau Decl. ¶ 4, ECF No. 40-6 (noting that Mr. Jones was discharged from custody on May 28, 2019); Change of Address, ECF No. 46 (indicating that Mr. Jones's new address was the MacDougall-Walker Correctional Institution).

On April 10, 2020, the Court dismissed Mr. Jones's Complaint under 28 U.S.C. § 1915A(b) without prejudice to the filing of an Amended Complaint. Initial Review Order at 19, ECF No. 12.

4

On October 9, 2021, Mr. Jones filed a proposed Amended Complaint. Mot. to Am. Compl., ECF No. 20. The Court construed the proposed Amended Complaint to allege the following cognizable claims against LPC Rodi: (1) a First Amendment retaliation claim stemming from the issuance of the February 1, 2019 disciplinary report; (2) a First Amendment retaliation claim stemming from the issuance of the April 12, 2019 disciplinary report; (3) an Eighth Amendment claim for deliberate indifference to mental health needs; and (4) a state law libel claim. Ruling and Order on Mots. to Am. and Am. Compl. at 18, ECF No. 23 ("Mot. to Am. Order"). Thus, the Court permitted Mr. Jones's case to proceed on those claims. *Id.*

On March 4, 2022, LPC Rodi filed a motion for summary judgment. Mot.; Mem. of L. in Supp. of Def.'s Mot. for Summ. J., ECF No. 40-1 ("Mem.").

On March 17, 2022, Mr. Jones filed a memorandum in opposition to LPC Rodi's motion for summary judgment. Pl.'s Obj. to Def.'s Mot. for Summ. J., ECF No. 42 ("Opp'n").

On March 31, 2022, LPC Rodi filed a reply in support of her motion for summary judgment. Def.'s Mem. in Further Supp. Of Mot. for Summ. J., ECF No. 45 ("Reply").

## II.     STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48.

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (internal quotation marks omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* (internal quotation marks omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); and *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

When deciding a motion for summary judgment, a court may review the entire record, including the pleadings, depositions, answers to interrogatories, admissions, affidavits, and any other evidence on file to determine whether there is any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pelletier v. Armstrong*, No. 3:99-cv-01559 (HBF), 2007 WL 685181, at *7 (D. Conn. Mar. 2, 2007). In reviewing the record, a court must "construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013). If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the non-moving party on the issue for which summary judgment is sought, then summary judgment is improper. *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

### III.   DISCUSSION

LPC Rodi moves for summary judgment on the grounds that (1) Mr. Jones has not exhausted his administrative remedies; (2) Mr. Jones's First Amendment retaliation claims fail on the merits; and (3) Mr. Jones's libel claim fails on the merits, or the Court should relinquish supplemental jurisdiction over this claim. Mot at 1.

The Court will address each issue in turn.

#### A.  PLRA Exhaustion

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust administrative remedies prior to filing a federal lawsuit regarding prison conditions. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").

LPC Rodi asserts that Mr. Jones did not pursue administrative remedies for retaliation or deliberate indifference claims while incarcerated and that his § 1983 claims must be dismissed for this reason. Mem. at 4–16.[2]

The Court disagrees.

The Court need not consider whether Mr. Jones's grievances sufficiently exhausted his administrative remedies with respect to the federal claims he asserts in this case because this action is not subject to the PLRA's exhaustion requirement. Although Mr. Jones's federal claims concern prison conditions within the terms of § 1997e, Mr. Jones did not file this lawsuit until after he was released from custody. Compl. at 1; Nadeau Decl. ¶ 4. The Second Circuit has held that plaintiffs like Mr. Jones "who file prison condition actions after release from confinement are no longer 'prisoners' for purposes of § 1997e(a) and, therefore, need not satisfy the exhaustion requirements of this provision." *Greig v. Goord*, 169 F.3d 165, 167 (2d Cir. 1999) (per curiam).

By the time Mr. Jones filed the operative Amended Complaint he was once again incarcerated. ECF No. 6. But the PLRA's exhaustion requirement applies only to an action "brought . . . by a prisoner confined in any jail, prison, or other correctional facility." 42 U.S.C. § 1997e(a). Thus, the plaintiff's status is determined at the time the action is "brought," *i.e.*, when the plaintiff files the initial complaint. *See Makell v. County of Nassau*, 599 F. Supp. 3d 101, 108 (E.D.N.Y. 2022) ("[O]n the issue of the proper time to determine the need for exhaustion, it is apparent that 'no action shall be brought' is so well understood that it must be

---

[2] LPC Rodi also argues that Mr. Jones failed to exhaust his state law libel claim. Mem. at 7–13. The PLRA, however, requires exhaustion only for claims brought under federal law. 42 U.S.C. § 1997e(a) (requiring exhaustion of administrative remedies for an action "brought with respect to prison conditions under section 1983 of this title, or any other Federal law"); *see also Nunez v. Goord*, 172 F. Supp. 2d 417, 430 (S.D.N.Y. 2001) ("As Nunez's cause of action alleging negligence does not invoke § 1983, or any other federal law, it is not subject to § 1997e(a)'s exhaustion requirement.").

given its plain meaning. Congress certainly did not mean it to refer to 'the filing of an amended complaint.'").

Thus, because Mr. Jones was not "a prisoner" when he filed his initial Complaint, his claims are not subject to the PLRA's exhaustion requirement.

Accordingly, the Court will deny LPC Rodi's motion for summary judgment on the issue of exhaustion. And because LPC Rodi does not argue that she is entitled to summary judgment on Mr. Jones's Eighth Amendment deliberate indifference claim for any reason other than Mr. Jones's failure to exhaust administrative remedies, the Court will deny summary judgment as to this claim.

### B. The First Amendment Retaliation Claims

To establish a First Amendment retaliation claim, a plaintiff must show: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009). Courts must "approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quoting *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003)).

The Court has permitted Mr. Jones to proceed with First Amendment retaliation claims arising from disciplinary reports issued by LPC Rodi on February 1, 2019, and April 12, 2019. Mot. to Am. Order at 8–9. LPC Rodi contends that she is entitled to summary judgment on these

9

claims because Mr. Jones cannot establish that he engaged in protected speech or that she acted with a retaliatory motive. Mem. at 18–23.

### 1. The February 1, 2019 Disciplinary Report

With respect to Mr. Jones's first retaliation claim, the Court has construed the operative Amended Complaint to allege that: (1) Mr. Jones engaged in protected speech by verbally complaining to supervisory officials about LPC Rodi's alleged failure to provide mental health treatment to prisoners; and (2) LPC Rodi took retaliatory, adverse action by filing a false disciplinary report against Mr. Jones. Mot. to Am. Order at 7–9.

LPC Rodi argues that Mr. Jones cannot establish that his verbal complaints qualify as protected speech under the First Amendment and that he has not put forth sufficient evidence suggesting a retaliatory motive. *See* Mem. at 18, 19, 22.

The Court disagrees.

"[T]he Second Circuit has yet to articulate a bright line rule regarding constitutionally protected oral speech by an inmate." *Cosby v. McDonald*, 3:20-cv-432 (MPS), 2020 WL 5026550, at *6 (D. Conn. Aug. 25, 2020) (citation and internal quotation marks omitted). Nonetheless, courts in this District often distinguish "verbal complaints about the conduct of correctional staff members" from "arguments or confrontations between a prisoner and correctional staff" to determine whether an oral grievance constitutes protected speech. *Meija v. Kurtzenacker*, 3:21-cv-1222 (MPS), 2022 WL 19331, at *4 (D. Conn. Jan. 3, 2022).

Here, Mr. Jones alleges that he complained to supervisory officials about LPC Rodi's job performance. Thus, there is at least a dispute of material fact as to whether Mr. Jones engaged in protected speech. *See Burton v. Salerno*, No. 3:20-cv-1926 (VAB), 2023 WL 184238, at *9 (D. Conn. Jan. 13, 2023) (holding that an inmate's oral complaints qualified as protected speech

because they were "more similar to petitions for redress of grievances than to verbal confrontations with corrections officers, which courts have concluded are not constitutionally protected conduct").

"With regard to false misbehavior reports, the type[s] of evidence required to establish a causal connection between the plaintiff's protected conduct and the alleged retaliation include temporal proximity, prior good discipline, a finding of not guilty at the disciplinary hearing and statements from the defendants regarding their motives." *Harnage v. Brighthaupt*, 168 F. Supp. 3d 400, 414 (D. Conn. 2016) (alteration in original), *aff'd*, 720 F. App'x 79 (2d Cir. 2018). LPC Rodi contends that Mr. Jones's retaliation claim is supported exclusively by the temporal proximity between his oral complaints and LPC Rodi's adverse action. Mem. at 18, 22. But Mr. Jones's claim also draws support from the administrative finding that he was not guilty of LPC Rodi's reported disciplinary infraction and his sworn allegation that LPC Rodi stated that the ticket was a response to Mr. Jones's complaint to LPC Rodi's supervisors. *See* Ex. A to Kingsley Decl. at 11; Am. Compl. at 5–6, ¶ 4. The Second Circuit has reversed a grant of summary judgment on a retaliation claim when evidence of temporal proximity was "further supported by the fact that essentially all relevant adverse actions by [correctional] officials were subsequently found to have been unjustified." *Bennett v. Goord*, 343 F.3d 133, 138 (2d Cir. 2003).

Here, LPC Rodi has attached to her summary judgment motion records showing that Mr. Jones never filed grievances complaining about her non-provision of mental health services and that Mr. Jones's grievance related to the disciplinary ticket did not allege a retaliatory motive. While this evidence may undermine Mr. Jones's retaliation claim, it does not establish the absence of a genuine dispute of material fact. When viewed in the light most favorable to Mr. Jones, the record presented—including the allegations in Mr. Jones's Amended Complaint that

are supported by personal knowledge—is sufficient to establish a triable issue of fact as to whether LPC Rodi acted with retaliatory intent. *Gary Friedrich Enters.*, 716 F.3d at 312 ("In reviewing a grant of summary judgment, we must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.").

Accordingly, the Court will deny LPC Rodi's motion for summary judgment with respect to Mr. Jones's first retaliation claim.

### 2.  The April 12, 2019 Disciplinary Report

With respect to Mr. Jones's second retaliation claim, the Court has construed the operative Amended Complaint to allege that: (1) Mr. Jones engaged in protected speech by filing a grievance against LPC Rodi and successfully defending himself against her initial disciplinary report; and (2) LPC Rodi took retaliatory, adverse action by filing a second false disciplinary report against Mr. Jones. Mot. to Am. Order at 7–9.

LPC Rodi asserts the same arguments that she raised as to the first retaliation claim with respect to the April 12 disciplinary report. Mem. at 22–23. She also notes that there is no dispute that Mr. Jones was found guilty of public indecency as a result of this report. *Id.* at 22. Thus, she concludes, the Court should grant summary judgment as to Mr. Jones's second retaliation claim.

The Court disagrees.

Unlike his first retaliation claim, Mr. Jones's second claim arises from indisputably protected speech—the filing of a grievance and his defense against a disciplinary charge. *See* Ex. A to Kingsley Decl. at 8, 11, 18; *see also Davis*, 320 F.3d at 352–53 ("[T]he filing of prison grievances is a constitutionally protected activity.).

With regard to retaliatory intent, Mr. Jones alleges that LPC Rodi issued her second disciplinary report shortly after telling him, "I got you now pervert . . . they dismissed the last

ticket not this one." Am. Compl. at 6, ¶¶ 8–9. This alleged statement, along with the temporal proximity between the February 21 grievance and the April 12 report, raises a genuine issue of fact as to whether LPC Rodi filed a second disciplinary report as retribution for Mr. Jones's success in the disciplinary proceeding arising from her first report. *See Baltas v. Rizvani*, No. 3:21-cv-436 (MPS), 2022 WL 17251761, at *8 (D. Conn. Nov. 28, 2022) (holding that "the causal link between plaintiff's speech and Officer Rizvani's adverse action is clear" because plaintiff "alleges that Rizvani explicitly attributed his threats and violence to plaintiff's lawsuit filings").

Furthermore, although Mr. Jones was found guilty of public indecency as a result of the second disciplinary report, the fact that the prior charge was not sustained raises a reasonable inference that the same retaliatory motive applied to both reports. *Cf. Bennett*, 343 F.3d at 138 (holding that allegations of retaliation were supported by evidence showing that "essentially all" adverse actions by correctional officials were later found to have been unjustified even though some of the actions had been upheld).

Accordingly, because there is a triable issue of fact as to whether LPC Rodi issued her second disciplinary report with a retaliatory motive, the Court will deny LPC Rodi's motion for summary judgment on that claim.

### C. The State Law Libel Claim

To establish a *prima facie* libel claim under Connecticut law, a plaintiff must show: "(1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Gambardella v. Apple Health Care, Inc.*, 291 Conn. 620, 627 (2009). A "defamatory statement" is a "communication

that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Id.* "[F]or a claim of defamation to be actionable," the defamatory statement must also be "false." *Cweklinsky v. Mobil Chem. Co.*, 267 Conn. 210, 228 (2004).

Here, LPC Rodi reported that Mr. Jones engaged in sexual behavior that, if known to the public, would lower Mr. Jones's reputational standing in the community. Although LPC Rodi contends that her reporting of sexual misconduct was truthful, Answer at 3, Mr. Jones has alleged that it was not, Am. Compl. at 6, ¶¶ 8–9. Thus, there is a genuine dispute of material fact with respect to the first three elements of Mr. Jones's defamation claim and as to the falsity of the claim.

LPC Rodi argues that she is nonetheless entitled to summary judgment on Mr. Jones's defamation claim because Mr. Jones has not alleged facts showing that he suffered a reputational injury. Mem. at 26–27.

The Court disagrees.

According to LPC Rodi's statement of material facts, Mr. Jones has repeatedly been adjudicated guilty of public indecency offenses over the past decade. Def.'s SMF ¶¶ 3–6 ("Between January 1, 2013 and January 31, 2019, Plaintiff was found guilty of public indecency on nine separate occasions."). In light of this record, it is perhaps doubtful that LPC Rodi's two additional accusations of misconduct could meaningfully affect Mr. Jones's reputation in the community. A plaintiff need not, however, prove concrete reputational harm when a defendant's false statements are defamatory *per se*. *See Silano v. Cooney*, 189 Conn. App. 235, 242 (2019) ("Once the plaintiff has established that the words are false and actionable per se, barring any statutory provision to the contrary, she is entitled under Connecticut law to recover general

damages without proof of special damages." (internal quotation marks omitted)). False statements qualify as defamatory *per se* when they "accuse a party of a crime involving moral turpitude." *Id.*

Here, LPC Rodi accused Mr. Jones of conduct that would constitute a crime. *See* Conn. Gen. Stat. § 53a-186 ("A person is guilty of public indecency when he performs . . . a lewd exposure of the body with intent to arouse or to satisfy the sexual desire of the person . . . [in a] place where the conduct may reasonably be expected to be viewed by others."). And although the Court has not identified any state court decisions that precisely address the conduct at issue here, Connecticut courts have held that accusations of lewd or indecent conduct can qualify as defamation *per se*. *See Rom v. Fairfield Univ.*, No. CV020391512S, 2006 WL 390454, at *3 (Conn. Super. Ct. Jan. 30, 2006) ("[B]ecause the presence of the plaintiff in the women's restroom can be considered an allegation of moral turpitude, the statements can be defamation per se and injury to the plaintiff's reputation is presumed."); *see also Moriarty v. Lippe*, 162 Conn. 371, 383 (1972) ("[M]oral turpitude involves an act of inherent baseness, vileness or depravity in the private and social duties which man does to his fellowman or to society in general, contrary to the accepted rule of right and duty between man and law.").

Accordingly, the Court will deny summary judgment on Mr. Jones's libel claim.[3]

IV.    **CONCLUSION**

For the foregoing reasons, LPC Rodi's motion for summary judgment is **DENIED**.

**SO ORDERED** at Bridgeport, Connecticut, this 10th day of March, 2023.

---

[3] LPC Rodi also argues that the Court should relinquish supplemental jurisdiction over the state law defamation claim "[t]o the extent that this Court enters summary judgment on the federal claims in favor of Rodi." Mem. at 23. Because the Court will deny Rodi's motion for summary judgment on the federal claims, it will retain supplemental jurisdiction over the state law claim.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE